IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PHILIP PHILEMON MONTGOMERY,

      Plaintiff,

vs.                                              No. CIV 02-1291 RB/LFG

THE HARTFORD FINANCIAL SERVICES
GROUP, INC. a/k/a "THE HARTFORD"
HARTFORD INSURANCE COMPANY OF
THE MIDWEST,

      Defendants,

CONSOLIDATED WITH:

PAUL SAMUEL MONTGOMERY,

      Plaintiff,

vs.                                              No. CIV 02-1612 RB/LFG

THE HARTFORD FINANCIAL SERVICES
GROUP, INC. a/k/a "THE HARTFORD"
HARTFORD INSURANCE COMPANY OF
THE MIDWEST,

      Defendants,

CONSOLIDATED WITH

PHILIP PHILEMON MONTGOMERY,

      Plaintiff,

vs.                                              No. CIV 03-0007 RB/LFG

THE HARTFORD FINANCIAL SERVICES
GROUP, INC. a/k/a "THE HARTFORD"
HARTFORD INSURANCE COMPANY OF
THE MIDWEST,

**Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss (Doc. 7), filed January 23, 2003, and Plaintiff's Motion for Summary Judgment, filed February 24, 2003 (Doc. 19), in Case No. CIV 02-1612 RB/LFG, Defendants' Motion to Dismiss Docket No. 8 in CIV 03-0007 for Failure to State a Claim (Doc. 94), filed May 9, 2003, and Defendants' Motion for Dismissal of and Summary Judgment on Docket No. 85 in CIV 02-1291 (Doc. 96), filed May 9, 2003, in Case No. CIV 02-1291 RB/LFG. Jurisdiction arises under 28 U.S.C. § 1332. Having reviewed the submissions of the parties and the relevant law, the Court finds that Defendants' motions are well-taken and should be granted and that Plaintiff's motion is not well-taken and should be denied.

### I.  Background.

Plaintiffs are brothers and proceeding *pro se*. On July 18, 2001, Philip Montgomery purchased a new 2001 Mercury Grand Marquis from a dealer in Bolingbrook, Illinois. Philip Montgomery purchased collision and comprehensive insurance from the Hartford Insurance Company (hereinafter "Hartford") while the vehicle was still on the dealer's lot, and arranged for the car to be trucked to Las Cruces, New Mexico by Reliable Carriers. The effective date of the policy was July 27, 2001. The car arrived in Las Cruces on the night of August 11, 2001. Philip Montgomery took delivery of the vehicle in the dark and parked it in his garage. Sometime thereafter, Philip Montgomery reported that the vehicle had been damaged. The Hartford offered to pay to repair the damage, but Philip Montgomery wanted a new car.

On October 15, 2002, Philip Montgomery filed a Complaint against the Hartford for bad faith, breach of contract and intentional infliction of emotional distress (hereinafter "02-1292"). In an Amended Complaint filed on April 29, 2003, Philip Montgomery alleges fraudulent misrepresentation and bad faith. Philip Montgomery seeks $250,000 in compensatory damages and $10 million in punitive damages, plus costs and interest.

Paul Montgomery filed a Complaint on December 23, 2002, (hereinafter "02-1612"). In the Amended Complaint filed on January 9, 2003, Paul Montgomery seeks to hold the Hartford liable for written statements by defense counsel in documents filed in 02-1291, and for attaching a letter written by Paul Montgomery as an exhibit to documents filed with the court. Specifically, Paul Montgomery states that he faxed a letter to the United States Attorney General in which he compared Reliable Carriers to the 9-11 terrorists. Paul Montgomery later faxed a copy of the letter to an adjuster employed by the Hartford. The Hartford's counsel referenced the letter in two responses to motions in 02-1291, and attached copies of the letter to the responses as exhibits. Paul Montgomery asserts claims for libel and intentional infliction of emotional distress because defense counsel selectively quoted from the letter and wrongly attributed it to Philip Montgomery. Paul Montgomery seeks $1 million in compensatory damages and $10 million in punitive damages, plus costs and interest.

On January 3, 2002, Philip Montgomery filed a Complaint (hereinafter "03-0007"), alleging two counts of libel based on defense counsel's use of Paul Montgomery's letter in 02-1291. Although the 03-0007 Complaint includes additional information about Philip Montgomery's early life, miliary record and work history, it alleges the same operative facts as the Amended Complaint in 02-1612. In the 03-0007 Complaint, Philip Montgomery requests $1 million in compensatory damages and $10 million in punitive damages, plus costs and interest.

## II. Standard for *pro se* litigants.

The court must liberally construe *pro se* litigants' pleadings and hold them to a less stringent standard than required of those prepared by a lawyer. *Gillihan v. Shillinger*, 872 F.2d 935, 938 (10th Cir. 1989). At the same time, the court may not assume the role of advocate for the pro se litigant, and need not accept as true unsupported conclusory allegations. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Moreover, pro se litigants must follow the same rules of procedure that govern other litigants. *Oklahoma Gold & Federated Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 139 (10th Cir. 1994). Plaintiffs' submissions have been analyzed with this standard in mind.

## III. Analysis.

**A. Defendants' Motion to Dismiss, filed January 23, 2003, and Plaintiff's Motion for Summary Judgment, filed February 24, 2003 (Doc. 19), in Case No. 02-1612, and Defendants' Motion to Dismiss for Failure to State a Claim, filed May 9, 2003, in 02-1291.**

The Hartford argues that the Amended Complaints filed in 02-1612 and the Complaint filed in 03-0007 should be dismissed because defense counsel's statements were absolutely privileged. The Amended Complaint in 02-1612 alleges a claim for libel and a claim for intentional infliction of emotional distress. The Complaint in 03-0007 alleges two counts of libel.

In ruling on a motion to dismiss, the court must accept all well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the non-moving party. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). A complaint should

4

not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). When accepting the complaint's allegations as true, the court must consider whether the complaint, standing alone, is legally sufficient to state a claim upon which relief may be granted. *See Ordinance 59 Ass'n v. United States Dep't of Interior Secy*, 163 F. 3d 1150, 1152 (10th Cir. 1998).

In support of their responses to the Hartford's motions to dismiss, the Montgomery's submitted matters outside the pleadings. Specifically, Paul Montgomery submitted a copy of a letter from defense counsel, notifying him that the Hartford planned to seek Rule 11 sanctions should they prevail on their motion to dismiss, (Pl. Ex. 1, 02-1612), and Philip Montgomery submitted an affidavit stating that he never used any other name and that he did not write the letter that was faxed by Paul Montgomery. (Pl. Ex. 1, 03-0007.) Rule 12(b) provides that if matters outside the pleadings are presented to and not excluded by the court, it should treat the motion to dismiss as a summary judgment motion. FED. R. CIV. P. 12(b). The Hartford's motions to dismiss raise purely legal questions. The Montgomery submissions are not relevant to the discrete legal issues raised by the Hartford and should be excluded and the motions should be analyzed under the standard for a motion to dismiss. *See Sanders v. Acclaim Entertainment, Inc.*,188 F.Supp.2d 1264, 1270 (D. Colo. 2002).

New Mexico law grants an absolute privilege from libel actions to statements in judicial proceedings. "'An absolute or unqualified privilege means absolute immunity from liability for defamation.'" *Baker v. Bhajan*, 117 N.M. 278, 281, 871 P.2d 374, 377 (1994); (*quoting Neece v. Kantu*, 84 N.M. 700, 705, 507 P.2d 447, 452 (Ct. App. 1973)). Application of an absolute privilege is restricted to situations with an obvious policy in favor of complete freedom of expression

5

regardless of the defendant's motives. *Baker*, 117 N.M. at 281, 871 P.2d at 377. An absolute privilege has been recognized with regard to statements in judicial and legislative proceedings, executive communications, communications between husband and wife, political broadcasts, and by consent of the plaintiff. *Id*.

"An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto." *Romero v. Prince*, 85 N.M. 474, 476, 513 P.2d 717, 719 (Ct. App. 1973). Thus, a defamatory statement of an attorney is absolutely privileged if it is reasonably related to judicial proceedings. *Superior Constr., Inc. v. Linnerooth*, 103 N.M. 716, 719, 712 P.2d 1378, 1381 (1986); *Penny v. Sherman*, 101 N.M. 517, 520, 684 P.2d 1, 1185182 (Ct. App. 1984). Whether a statement is reasonably related to a judicial proceeding is a question of law for the court to determine. *Gelinas v. Gabriel*, 106 N.M. 221, 221-22, 741 P.2d 443, 443-44 (Ct. App. 1987). The absolute privilege afforded statements of an attorney in judicial proceedings bars the libel claims raised in 02-1612 and 03-0007.

The court has liberally construed the Montgomery's pleadings. The well-pleaded factual allegations are accepted as true and viewed in the light most favorable to the Montgomery's. In light of these standards, the Montgomery's have failed to state a libel claim. The alleged defamatory statements were made by defense counsel in response to motions that were filed by Philip Montgomery in pending litigation. The statements concerned a letter written by Paul Montgomery about the subject matter of 02-1291; they were relevant to Philip Montgomery's state of mind and his credibility. Counsel's statements and use of the letter were reasonably related to the judicial

proceedings. Therefore, the statements of defense counsel and the use of the letter are shielded by absolute privilege. Because the statements by defense counsel are absolutely privileged, the Hartford is absolutely immune from the libel claims raised in 02-1612 and 03-0007. Defendants' Motion to Dismiss, filed January 23, 2003, in 03-0007 and Defendants' Motion to Dismiss for Failure to State a Claim, filed May 9, 2003, in 02-1291, should be granted.

In addition to the libel claim, Paul Montgomery alleges a claim for intentional infliction of emotional distress in 02-1612. Under New Mexico law, the court initially determines as a matter of law whether conduct reasonably may be regarded as so extreme and outrageous that it will permit recovery under the tort of intentional infliction of emotional distress. *See Trujillo v. Puro*, 101 N.M. 408, 414, 683 P.2d 963, 969 (Ct. App.1984).

Generally, in order to qualify under this standard, the recitation of the underlying facts to an average member of the community must arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" *Padwa v. Hadley*, 127 N.M. 416, 419, 981 P.2d 1234, 1237 (1999) (*citing* Restatement (Second) of Torts § 46 cmt. d. (1965)). The conduct must be so extreme in degree as to go beyond all possible bounds of decency, and be regarded as atrocious, and utterly intolerable in a civilized community. *Dominguez v. Stone*, 97 N.M. 211, 214, 638 P.2d 423, 426 (Ct. App. 1981). The mere fact that an actor knows that his conduct is insulting, or will deeply hurt another's feelings, is insufficient to establish liability under this theory. *Padwa*, 127 N.M. at 419, 981 P.2d at 1237.

In *Padwa* the New Mexico Supreme Court further explained that:

> By characterizing conduct as atrocious and utterly intolerable and beyond all possible bounds of decency, the Restatement sets the threshold at the very highest level for conduct to be considered actionable under the tort of outrage. It recognizes that, as part of the price of personal liberty, a free and democratic society must tolerate

7

> certain offensive conduct as well as some obnoxious or morally deviant behavior. Accordingly, the mere fact than an actor knows that his conduct is insulting, or will deeply hurt another's feelings is insufficient to establish liability . . . Accordingly, caution, therefore, is the watchword when examining whether the tort of intentional infliction of emotional distress encompasses the facts of a case.

*Padwa,* 127 N.M. at 420, 981 P. 2d at 1238.

For the purposes of this analysis, all factual allegations of Paul Montgomery's Amended Complaint are accepted as true and viewed in the light most favorable to him. *See Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d at 1236. Paul Montgomery's pleadings are liberally construed, due to his *pro se* status. Paul Montgomery alleges that defense counsel used the letter in 02-1291 to damage his reputation and to inflict emotional distress. Paul Montgomery asserts that because the letter is now public record and available on the internet, he is subjected to ridicule and embarrassment without the opportunity to explain the circumstances.

After accepting these allegations as true, and liberally construing them in the light most favorable to Paul Montgomery, I find that the conduct of the Hartford does not rise to the level necessary to permit recovery under the heightened threshold of the tort of intentional infliction of emotional distress. *Padwa,* 127 N.M. at 420, 981 P. 2d at 1238 (initiating sexual relations with friend's current wife, former wife, and former fiancée insufficient to state claim for intentional infliction of emotional distress). The conduct alleged is not so atrocious and utterly intolerable so as to progress beyond all possible bounds of decency so as to constitute intentional infliction of emotional distress under New Mexico law. *Id.* The distress alleged by Paul Montgomery in this case is no more severe than the distress suffered by many people engaged in litigation. As such, it is not actionable under New Mexico law as a claim for intentional infliction of emotional distress. *See id.*

Because Paul Montgomery's allegations are insufficient to state a claim for intentional infliction of emotional distress under New Mexico law, the Amended Complaint filed in 02-1612 should be dismissed in its entirety.

In light of the dismissal of 02-1612, Paul Montgomery's motion for summary judgment should be denied as moot.

**B.     Defendants' Motion for Dismissal of and Summary Judgment on Docket No. 85 in CIV 02-1291 (Doc. 96), filed May 9, 2003.**

The Hartford moves to dismiss or in the alternative for summary judgment on Philip Montgomery's claims in 02-1291. If, on a Rule 12(b)(6) motion, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56. FED.R.CIV P. 12(b). The Hartford has presented matters outside the pleadings, which should not be excluded. Accordingly, the Hartford's motion will be analyzed as a motion for summary judgment.

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Muñoz v. St. Mary Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) (*quoting* Rule 56(c)). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken

9

as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F.3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Munoz,* 221 F.3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The district court may only consider admissible evidence submitted to defeat summary judgment. *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548, 1555 (10th Cir. 1995); *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1203 n.1

(10th Cir. 2000).

Liberally construed, the Amended Complaint in 02-1291 alleges two claims; fraudulent misrepresentation and bad faith. In order to prevail on a fraudulent misrepresentation claim, the plaintiff must show that the other party (1) made a misrepresentation of fact intentionally or with reckless disregard for the truth, (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relies. UJI 13-1633, NMRA (2002).

The Hartford has shown an absence of evidence that it misrepresented facts intentionally or with reckless disregard for the truth. Philip Montgomery contends that the Hartford engaged in fraudulent misrepresentation by marketing its insurance as "AARP" insurance. Philip Montgomery purchased coverage for his vehicle from the Hartford with an effective date of July 27, 2001. (Doc. 85, ¶ 3.) Upon delivery of the car by Reliable Carriers, Philip Montgomery signed a freight bill indicating that the vehicle showed 34 miles on the odometer and that a right rear molding was loose. (Def. Ex. E.) A subsequent inspection revealed that the vehicle was severely damaged. (Doc. 85, ¶ 4.)

On August 24, 2001, the Hartford's appraiser determined that the vehicle was not a total loss, but was repairable. (Def. Ex. G.) On August 28, 2001, the Hartford offered to pay the estimated cost of repairs. (Def. Ex. F.) The policy does not provide for new car replacement unless a vehicle is a total loss. (Def. Ex. B.) The appraiser determined that the car was repairable. (Def. Ex. G.) The Hartford has discharged their burden by showing there is an absence of evidence to support Philip Montgomery's case. The burden shifted to Philip Montgomery to demonstrate a genuine issue for trial on a material matter.

Local Rule 56.1 requires that a party responding to a motion for summary judgment identify with particularity the material facts presented by the moving party as undisputed that the responding party contests are disputed. Philip Montgomery's responsive brief fails to meet the requirements of Local Rule 56.1. Mr. Montgomery's *pro se* status does not excuse his obligation to comply with court rules. *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994); *Oklahoma Gold & Federated Numismatics, Inc.*, 24 F.3d at 139. The response is insufficient to raise a material factual dispute to defeat the Hartford's supported motion for summary judgment. Philip Montgomery has failed to show how marketing of auto insurance as "AARP insurance" was a misrepresentation that he relied on to his detriment. Philip Montgomery has failed to establish that the Hartford made any misrepresentations, acted with an intent to deceive him or induced him to act upon it or that he relied on any of the alleged misrepresentations to his detriment. Under these circumstances, the Hartford is entitled to summary judgment on the fraudulent misrepresentation claim.

The Hartford moves for summary judgment on Philip Montgomery's insurance bad faith claim. The New Mexico Uniform Jury Instruction on bad faith provides:

> An insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded. An insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy. In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair investigation or evaluation of the claim. It may not unreasonably delay its notification to the policyholder that the claim will be paid or denied. A failure to timely investigate, evaluate, or pay a claim is a bad faith breach of the duty to act honestly and in good faith in the performance of the insurance contract.

UJI 13-1702 NMRA 2002.

Philip Montgomery alleges that he made several unanswered phone calls to the Hartford and

that Hartford employees promised to send him a claim resolution letter, but failed to do so. The policy does not provide for new car replacement unless a vehicle is a total loss. (Def. Ex. B.) The appraiser determined that the car was repairable. (Def. Ex. G.) The Hartford submitted evidence it offered to pay for the damage within one month after Philip Montgomery provided proof of loss. (Def. Ex. F.) The Hartford has discharged their burden by showing there is an absence of evidence to support Philip Montgomery's case. The burden shifted to Philip Montgomery to demonstrate a genuine issue for trial on a material matter. Philip Montgomery has failed to meet this burden. Therefore, summary judgment should be granted in favor of the Hartford on the bad faith claim.

**IV. Conclusion.**

Defendants' motions to dismiss 02-1612 and 03-0007 based on absolute privilege should be granted. Paul Montgomery's claim for intentional infliction of emotional distress should be dismissed *sua sponte* for failure to state a claim. Paul Montgomery's motion for summary judgment should be denied as moot. The Hartford is entitled to summary judgment on both causes of action alleged by Philip Montgomery in CIV 02-1291.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 7), filed on January 23, 2003, in Case No. CIV 02-1612 RB/LFG, and Defendants' Motion to Dismiss Docket No. 8 in Case No. CIV 03-0007 for Failure to State a Claim (Doc. 94), filed on May 9, 2003, in Case No. CIV 02-1291 RB/LFG, are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 19), filed on February 24, 2003, in Case No. CIV 02-1612 RB/LFG is **DENIED**.

13

**IT IS FURTHER ORDERED** that Defendants' Motion for Dismissal of and Summary Judgment on Docket No. 85 in CIV 02-1291 (Doc. 96), filed May 9, 2003, in Case No. CIV 02-1291 RB/LFG, is **GRANTED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**